## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JULIA A. SAMUELS,                          )
                                           )
                    Plaintiff,             )
                                           )
         v.                                )        Case No. 14-2507-JAR
                                           )
CAROLYN W. COLVIN,                         )
ACTING COMMISSIONER OF                     )
SOCIAL SECURITY,                           )
                                           )
                    Defendant.             )

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner

of Social Security denying Plaintiff Julia Samuels' application for a period of disability and

disability insurance benefits under Title II of the Social Security Act,[1] and supplemental security

income under Title XVI of the Social Security Act.[2]   Because the Court finds that Defendant

Commissioner's findings at step 5 are not supported by substantial evidence, the Court reverses

and remands this matter to Defendant.

## I.      Procedural History

On May 3, 2011, Plaintiff protectively applied for a period of disability and disability

insurance benefits, as well as for supplemental security income, alleging an onset date of February

7, 2011.   Plaintiff was last insured for disability insurance benefits on December 31, 2015.

Plaintiff's applications were denied initially and upon reconsideration.   Plaintiff timely requested

a hearing before an administrative law judge ("ALJ").   After a hearing, the ALJ issued a decision

---

[1] 42 U.S.C. §§ 401–434.

[2] 42 U.S.C. §§ 1381−1385.

1

finding that Plaintiff was not disabled; the Appeals Council denied plaintiff's request for review of the ALJ's decision.   Plaintiff then timely sought judicial review before this Court.

## II.    Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[3]   The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4]   In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[5]

## III.    Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[6] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[7]   The Secretary has established a

---

[3]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[4]*Id.* (quoting *Castellano*, 26 F.3d at 1028).

[5]*Id.*

[6]42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[7]*Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

five-step sequential evaluation process to determine whether a claimant is disabled.[8] If the ALJ

determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[9]

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not

engaged in substantial gainful activity[10] since February 7, 2011, the alleged onset date. Nor does

Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe"

impairments: attention deficit hyperactivity disorder ("ADHD"), affective disorder, anxiety

disorder and personality disorder. Nor does Plaintiff challenge the ALJ's determination at step

three that she does not have an impairment or combination of impairments that meet or equal a

listing.

But Plaintiff challenges the ALJ's determination of Plaintiff's Residual Functional

Capacity ("RFC"),[11] which Plaintiff argues is the product of the ALJ: (1) failing to properly

evaluate Plaintiff's credibility; (2) erroneously rejecting the opinions of treating physician Dr.

Geenens, and treating therapists, Michelle Kanga, M.A. and Juliet Nelson, L.C.P.; (3) failing to

account for the ALJ's own finding that Plaintiff's limitations include moderate difficulties in

maintaining concentration, persistence or pace and failing to fully account for Plaintiff's

difficulties maintaining social functioning; and (4) erroneously relying upon testimony from the

---

[8]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir.1983).

[9]*Id.*

[10]*See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

[11]Plaintiff also argues that Defendant erred in contending that the RFC determination is made by the state agency consultants. Plaintiff misconstrues Defendant's argument, which acknowledged that the RFC determination is made by the ALJ. Plaintiff also conflated the ALJ's RFC determination with the ALJ's prefatory analysis of the severity of Plaintiff's mental impairments, which requires a determination of whether the claimant's limitations meet, *inter alia*, the so-called paragraph B or paragraph C criteria of the listings. *See* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("[t]he limitations identified in the 'paragraph B' and 'paragraph C' criteria [of the PRTF form] are not an RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.").

vocational expert that Plaintiff can perform the jobs of groundskeeper and small products assembler.

## IV. Discussion

The ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels but with these nonexertional limitations, to wit:

> The claimant can understand, remember and carry out simple instructions and routine tasks. She is limited to occasional contact with the general public and socially isolated-type work would be best. She can adapt to work situations that do not require extensive independent planning and goal setting.

### A. Credibility Determination

Plaintiff contends that the ALJ's determination of her RFC was in part the product of his erroneous assessment of her credibility. The ALJ considered, but discredited, Plaintiff's claims that she was unable to work due to severe depression,[12] anxiety, feelings of hopelessness, social isolation, inattentiveness and inability to follow directions and complete tasks.

Given that Plaintiff's claimed symptoms and limitations are largely subjective, the ALJ necessarily evaluated the credibility of Plaintiff's subjective complaints. Here, the ALJ expressly discussed the requirement that Defendant perform a two-step evaluation, first determining whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's symptoms; and then, taking into consideration the entire case record, evaluating the intensity, persistence, and functionally limiting effects of the symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities.[13] The ALJ further acknowledged the requirement that whenever the claimant's

---

[12]Plaintiff does not challenge the ALJ's determination of her severe impairments at step two, nor is depression one of Plaintiff's severe impairments.

[13]*Jones v. Astrue,* 500 F. Supp. 2d 1277, 1288–89 (D. Kan. 2007).

claimed symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements, based on consideration of the entire case record.[14]

The ALJ detailed, explained and supported his finding that Plaintiff's subjective complaints were exaggerated and not credible to the extent her complaints were inconsistent with the ALJ's determination of Plaintiff's RFC. Plaintiff does not address all of the ALJ's reasoning, prompting Defendant to argue that Plaintiff has waived objection to the ALJ's credibility analysis. In any event, this Court finds that the ALJ's credibility analysis was proper, as the ALJ considered the entire case record, and determined that Plaintiff's medically determinable mental impairments could not be expected to produce symptoms of the intensity, persistence and functionally limiting effects claimed by Plaintiff. In so doing, the ALJ considered both medical and non-medical evidence, and in particular, how Plaintiff's subjective complaints were contradicted by her own admissions of her activities and work history, as well as by the statements of her family and the longitudinal treatment records. And, the ALJ appropriately cited to and discussed the applicable standards for determination of credibility.[15]

First, despite Plaintiff's testimony that she was bedridden four to five days a week, her own reports of her activities of daily living contradict this. For Plaintiff reported that she engages in normal housework, including preparing simple meals, doing yard work for her parents, washing windows, walking, banking, and taking mental health classes, none of which are activities that can be performed by someone whose mental impairments confine her to bed. Moreover, the record also illustrates that Plaintiff's reports that she was bedridden and slept most of the time, wildly vacillated over time, supporting the ALJ's determination that Plaintiff's subjective complaints

---

[14]*Id.* (citing SSR 96-7p).

[15]*See* SSR 96-7P, 1996 WL 374186 (July 2, 1996).

were not fully credible.   For example, in November 2011, Plaintiff reported to Johnson County

Mental Health that she was sleeping ten hours a day, and sometimes for three days at a time.   In

January 2012, she reported sleeping an average of 14 hours a day for the last one to two years.   In

May 2012, she reported that she slept about eight to nine hours a night.

Similarly, despite Plaintiff's testimony that she was socially isolated, her activities of daily

living, as self-reported to her treatment providers and others, belies this claim.   Plaintiff has

reported that she goes out drinking, attends mental health classes, socializes with family and

friends, has no problem interacting with neighbors and other people, including authority figures,

works out at a gym, and at times has worked at an antique mall, as a landscaper, or as a housesitter.

Of course, Plaintiff has also at times reported to her treatment providers that she is socially

isolated.   But, the ALJ properly considered all of the evidence, including these contradictory

statements, in concluding that Plaintiff's complaints of being bedridden and socially isolated were

exaggerated.   Moreover, the ALJ properly found that Plaintiff had withheld material information

from her treating sources at times, such as the nature and extent of her daily living activities and

her part-time work activity.

To be sure, the nature of daily activities is only one of many factors to be considered by the

ALJ when determining the claimant's credibility, and the sporadic performance of household tasks

or work does not establish that a person is capable of engaging in substantial gainful activity.[16]

But while the ALJ should not place too much reliance upon the activities of daily living in

determining RFC, in assessing credibility, the ALJ may properly consider a claimant's

self-reported daily activities, when those reports are inconsistent with the claimant's testimony

---

[16]*Thompson v. Sullivan*, 987 F.2d 1482, 1489—90 (10th Cir. 1993).

before the ALJ.[17]

Just as Plaintiff's reports to Defendant of her activities of daily living discredited her testimony that she was bedridden and socially isolated, the longitudinal treatment records show that she reported to her treating physician, Dr. Douglas Geenens, that she worked out at a gym, performed household duties and chores, and engaged in social activities. At the outset of her treatment relationship with Dr. Geenens, Plaintiff reported more depression and social isolation. But, as Dr. Geenens noted, Plaintiff's degree of depression at the outset of treatment was situational, as she had just ended a nine-year relationship with a boyfriend who failed to deliver promised financial support and who soon married another. This led to Plaintiff being forced to live with various family members and being unhappily pushed into caring for her elderly mother. Over time, Plaintiff reported increased engagement in daily activities and social activities.

Here, the ALJ did not only consider Plaintiff's self-reported activities of daily living in assessing her credibility, he considered other evidence touching on her credibility. For example, Plaintiff's sisters reported that Plaintiff enjoyed shopping and gambling, to the extent that they considered it addictive behavior, belying Plaintiff's claims of being bedridden and socially isolated; and her sisters further reported that Plaintiff had a history of lying.

And, Plaintiff was further discredited by her inconsistent statements about her alcohol use. Plaintiff argues that the ALJ improperly relied upon her alcohol use in discrediting her, since there was no finding that she had a severe impairment of substance abuse. But Plaintiff misconstrues the ALJ's analysis. The ALJ did not discredit Plaintiff because she used alcohol, nor did he presume that Plaintiff's use of alcohol rendered her less credible.[18] Rather, the ALJ discredited

---

[17] *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992).

[18] *See* SSR 13-2p, 2013 WL 1221979 (March 22, 2013) (precluding the ALJ from presuming that all

Plaintiff, in part, because of her inconsistent and contradictory statements about her use of alcohol. Plaintiff's father expressed concern about her alcohol abuse, and Dr. Geenens noted that Plaintiff had a history of using alcohol to self-medicate. Yet, Plaintiff told Dr. Geenens that she would consume one drink before she went out, and one drink while she was out. And, Plaintiff continually attempted to minimize focus on this, telling treatment providers in March 2011, January 2012, and March 2012, that she consumed no more than two to three drinks a week, and in April 2011 telling a treatment provider that she did not drink alcohol.

Of equal concern were Plaintiff's inconsistent statements about performing part-time work after the alleged onset date. The ALJ found that Plaintiff had worked as a landscaper, house sitter, and had staffed her friends' booth at an antique mall, during periods of 2011, 2012 and 2013. The ALJ found notable that Plaintiff had not reported these earnings to the IRS or Social Security, a finding that Plaintiff challenges because the ALJ did not question Plaintiff about the extent of her earnings to determine whether her earnings met the reporting threshold.

But, irrespective of this question, it is notable that Plaintiff provided inconsistent statements about the extent, nature and scope of the work she performed in these various jobs. Plaintiff claims that she did not work as a landscaper, but merely helped do some yard work for her mother. Yet, she told a treatment provider that she did some landscaping work and got paid "a little bit." Plaintiff claims that she only house sat a few times, but she also reported serving as her elderly mother's caretaker. And, Plaintiff described working at the antique mall booth periodically, over two months, with no set hours, at a time that Dr. Geenens noted in his treatment records that she had not worked at all in two years.

claimants with a medically determinable impairment of alcohol abuse are inherently less credible); *see Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (finding proper for ALJ to consider claimant's misrepresentations about extent of her alcohol use when considering her overall credibility).

While sporadic, part-time work does not equate with the requisite that a claimant must be able to perform sustained work activities in an ordinary work setting on a regular and continuing basis,[19] here the ALJ did not consider this work activity determinative of the ultimate question of disability; rather, it was but one factor he considered. For even if the work done during a period of claimed disability did not rise to the level of substantial gainful activity, "it may show that you are able to do more work that you actually did."[20]

As Plaintiff posits, the ALJ also relied on evidence that Plaintiff was not fully compliant with her medication regime. The Court agrees with Plaintiff that the ALJ improperly relied upon this evidence, for he failed to consider evidence that Plaintiff tried a number of medications seeking relief and rejected many as not efficacious or because of side effects. To rely upon non-compliance with a medication regimen as a factor in assessing credibility, the ALJ must consider the reasons for non-compliance.[21] Here the ALJ did not.

Nonetheless, from the evidence that the ALJ properly considered, it is clear that Plaintiff's credibility was compromised by her minimization of her work history, as well as her minimization of her alcohol use, and her contradictory statements about her daily activities that belied her testimony that she was bedridden and socially isolated. In short, this Court finds no error in the ALJ's assessment and findings concerning Plaintiff's credibility. "Credibility determinations are peculiarly the province of the finder of fact" and will stand when supported by substantial

---

[19]*See* SSR 96-8p, 1996 WL 374184 (July 2, 1996).

[20]20 C.F.R. §§ 404.1571, 416.971.

[21]*See* 20 C.F.R. §404.1530(c), 416.930(c); *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (citing *Frey v. Bowen,* 816 F.2d 508, 517 (10th Cir. 1987)).

evidence,[22] such that courts usually defer to the ALJ on matters involving credibility.[23] The ALJ's credibility determinations in this case are supported by substantial evidence and entitled to such deference.

## B. Weight accorded treating physician Dr. Douglas Geenens

Dr. Douglas Geenens, who treated Plaintiff for fifteen months, from May 2011 to January 2013, rendered opinions in narrative letters dated May 1, 2012 and December 1, 2012, as well as on a November 27, 2012 form *Mental Impairment Evaluation and Mental Residual Functional Capacity Assessment*.   The ALJ gave Dr. Geenens' opinions no weight, concluding that "this evidence has no probative value because the totality of the evidence does not support it."

As a treating source provider, Dr. Geenens' opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence in the record; but if it is "deficient in either respect, it is not entitled to controlling weight."[24]   And, even if the opinion of a treating provider is not worthy of controlling weight, it must still be accorded deference and must still be evaluated in light of the factors set forth in the relevant regulations.[25]   For the reasons discussed below, this Court concludes that the ALJ appropriately gave no weight and little deference to the opinions of Dr. Geenens.

First, the ALJ properly gave no weight to Dr. Geenens' opinion that Plaintiff is disabled

---

[22]*Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010).

[23]*Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

[24]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96- 2p, 1996 WL 374184, at *5 (July 2, 1996)).

[25]*Newbold v. Colvin*, 718 F.3d 1257, 1265 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1527 and 416.927).

and unable to support herself.   These opinions were not entitled to weight or deference because they invaded the province of the ALJ to determine the ultimate question of whether Plaintiff was disabled.   Notably, despite opining in November 2012 that Plaintiff could not work, in a November 2012 treatment note, Dr. Geenens noted that Plaintiff should try to obtain a part-time job; in a January 2013 treatment note, he wrote as part of Plaintiff's life plan, her goal was to obtain a job within thirty days.

Further, with respect to Dr. Geenens' opinions in the form *Mental Impairment Evaluation and Mental Residual Functional Capacity Assessment* he completed on November 27, 2012, Plaintiff posits that the ALJ properly discredited these opinions because they were conclusory, rendered in the form of checkbox answers to the many questions posed in the form.   But, Dr. Geenens provided some explanation in his answers on the form, as well as in his two narrative opinion letters dated May 1, 2012 and December 1, 2012, that allows for this Court's meaningful review of his conclusory answers on the November 27 form.

Specifically, in the November 27 form *Mental Impairment Evaluation and Mental Residual Functional Capacity Assessment*, Dr. Geenens opined that Plaintiff had marked or extreme difficulties or restrictions in: activities of daily living; maintaining concentration, persistence and pace; ability to understand, remember or carry out detailed instructions understanding; perform activities within a schedule, maintain regular attendance or be punctual; ability to work in coordination with others without distraction; ability to set realistic goals or make plans independently of others; get along with coworkers or peers.   Dr. Geenens further opined that Plaintiff had moderate restrictions in: social functioning; ability to remember locations and work-like procedures; understand, remember and carry out very short and simple instructions;

ability to sustain an ordinary routine without special supervision; ability to ask simple questions or request assistance.

With respect to Dr. Geenens' opinion that Plaintiff had marked or extreme limitations in understanding, remembering and carrying out detailed instructions, the ALJ's RFC is not inconsistent. However, the RFC states that Plaintiff can understand, remember and carry out simple instructions and routine tasks, while Dr. Geenens opines that Plaintiff has moderate limitations with respect to very short and simple instructions and moderate limitations in ability to sustain an ordinary routine, as well as moderate limitations in ability to remember locations and work-like procedures. But nothing in Dr. Geenens' May and December narrative opinion letters, and nothing in his treatment records provides any explanation or support for his opinions about Plaintiff's inability to deal with even short, simple instructions. At best, in September 2011 and March 2012 treatment notes, Dr. Geenens recorded his observation that Plaintiff had "excessive forgetfulness"; but on his September 2011 note, he also wrote "why?" with respect to Plaintiff's decreased memory, indicating that he had no explanation for it. Moreover, his treatment records do not explain whether it was short-term or long-term memory at issue. Furthermore, Dr. Geenens' treatment records did not otherwise document problems with memory or ability to deal with instructions.

Dr. Geenens further opined that Plaintiff had extreme limitations in maintaining concentration, persistence or pace, in performing activities within a schedule, and with punctuality and maintaining regular attendance. The ALJ gave no weight to this opinion and the RFC does not incorporate these limitations. But again, there is virtually no explanation, much less support, in Dr. Geenens' narrative letters or contemporaneous treatment records for these opinions. Dr.

Geenens' records do not evidence Plaintiff's difficulty with punctuality; though his records do reflect that she failed to show up for two appointments. And, Dr. Geenens explains that Plaintiff's problems with attention and concentration are evident in her having had multiple car accidents. But other than these objective observations or inferences, Dr. Geenens' explanations are apparently reliant upon Plaintiff's subjective reports, such as her inability to read a book and her inability to get out of bed.

Indeed, much of Dr. Geenens' treatment records are devoted to recording Plaintiff's subjective complaints. But Plaintiff's subjective complaints are not substantial evidence, given Plaintiff's credibility problems, as the ALJ properly evaluated and discussed. Moreover, the reports of third parties that Plaintiff is an addictive gambler are contrary to Dr. Geenens' opinion that Plaintiff has no ability to sustain attention or concentration, two activities that are critical to gambling games.

Dr. Geenens' opinions about the extent of Plaintiff's limitations in social functioning are also not based on substantial evidence. Dr. Geenens opined that Plaintiff has extreme limitations in her ability to work in coordination with others without distraction, her ability to set realistic goals or make plans independently of others and her ability to get along with coworkers or peers. The RFC partially incorporates these limitations, recognizing that Plaintiff is "limited to occasional contact with the general public and socially isolated-type work would be best. She can adapt to work situations that do not require extensive independent planning and goal setting."

Plaintiff argues that the RFC erroneously fails to include a limitation that she is unable to work with supervisors. But Plaintiff's self-reported activities of daily living indicate that she has no problems interacting with family, friends, or more importantly, with people in positions of

authority.   And, neither Dr. Geenens' treatment records, nor his narrative letters, nor other evidence, explain or support his conclusion that Plaintiff cannot interact at all with the public, coworkers or supervisors.   Indeed, his treatment records reflect Plaintiff's reports that she worked out at a gym and went out drinking.   Dr. Geenens' records also reflect his awareness that Plaintiff was or had been an addictive shopper and gambler .

Moreover, although Dr. Geenens relies upon Plaintiff's unemployment history to explain her limitations in social functioning, he relies on incorrect information.   Dr. Geenens noted that Plaintiff had been fired from her last six jobs and had been unemployed for two years; but at the time of this treatment note, Plaintiff was working as a caretaker for her mother.   And his own treatment records reflect that Plaintiff had reported working as a house sitter in 2011, and that in January 2013 she had been periodically staffing a booth at an antique mall for two months.

Dr. Geenens offered still other opinions that find little or no explanation or support in his narrative letters, his treatment records, or other medical or nonmedical evidence in this record. For example, he opined that Plaintiff had marked episodes of decompensation, each of an extended duration.   Yet he did not mention anything about decompensation in his treatment notes, except to note that in the past few years, Plaintiff had lived in supportive environments, first with her sister, then with her parents.

Moreover, on the November 2012 form, Dr. Geenens checked a number of boxes for symptoms of depressive syndrome, some of which are addressed in his treatment notes: anhedonia, sleep disturbance, decreased energy, difficulty concentrating or thinking, feelings of guilt or worthlessness.   But these notations in his treatment notes are largely based on Plaintiff's subjective complaints.   Other boxes Dr. Geenens checked are not at all addressed by his treatment

notes: psychomotor agitation or retardation, appetite disturbance with change in weight. Similarly, despite checking the box that Plaintiff had a residual disease process in such marginal adjustment that she could not adjust to even a minimal increase in mental demands or change in environment, his treatment records do not address that issue.

In short, this Court agrees with the ALJ according no weight to Dr. Geenens' opinions because, as the ALJ explained, "this evidence has no probative value because the totality of the evidence does not support it."   In *Goatcher v. U.S. Dep't of Health & Human Services*,[26] the Tenth Circuit directed that the ALJ consider the following factors in determining what weight to give any medical opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[27]

The ALJ discussed the degree to which Dr. Geenens' opinions were supported by relevant evidence, and the many inconsistencies between the opinions and the record as a whole. Although Dr. Geenens had a treatment relationship with Plaintiff that spanned some fifteen months, and thus was situated to contemporaneously evaluate Plaintiff's impairments and limitations, his treatment records do not provide contemporaneous evidence and support for his opinions that Plaintiff suffers from many extreme or moderate limitations.   Rather, his treatment records evidence contemporaneous notations that Plaintiff was only mildly dsyphoric, and

---

[26] 52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

[27] *Id.*

typically had eurythmic mood, good range of affect, goal-directed thoughts, with no psychosis and no mania. Furthermore, as the ALJ found, Dr. Geenens' opinions appeared to be largely based on an uncritical acceptance of Plaintiff's subjective complaints to him. It is entirely proper to discredit or deny deference to the opinion of a treating physician that is inconsistent with the physician's own treatment records[28] or with other medical evidence.[29]

The ALJ duly considered these *Goatcher* factors in evaluating Dr. Geenens' opinion, and this Court agrees that those factors justify giving Dr. Geenens' opinion no weight. Moreover, the ALJ had no duty to re-contact Dr. Geenens, as Plaintiff posits, simply because the ALJ determined to give no weight to Dr. Geenens' opinions. There was sufficient evidence in the record for the ALJ to evaluate Dr. Geenens' opinions and for the ALJ to determine RFC, such that the duty to re-contact the treating doctor was not triggered.[30]

### C. Weight accorded treating therapists Michelle Kanga and Juliet Nelson.

Plaintiff also argues that the ALJ erred in rejecting the joint November 8, 2011 opinion of treating therapists Michelle Kanga, M.A. and Juliet Nelson, L.C.P. But, the ALJ did not reject their opinion simply because Ms. Kanga and Ms. Nelson do not qualify as acceptable medical sources.[31] Rather, the ALJ expressly considered their opinion, and gave their opinion less weight not only because they are not acceptable medical sources but also because their opinion suffered from the same inadequacies as Dr. Geenens' opinion. For example, the therapists improperly

---

[28]*Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

[29]*Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009).

[30]*See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir.2002) (duty to re-contact arises, not from rejection of a treating source's opinion, but when evidence so inadequate that a determination of disability cannot be made, citing 20 C.F.R. §416.912(e)).

[31]*See* 20 C.F.R. §§ 404.1502, 416.902 (defining acceptable medical sources).

rendered an opinion on the ultimate question of Plaintiff's disability and ability to work. And, although their opinion includes some objective observations, such as Plaintiff's problems with punctuality, and sporadic attendance at her appointments with them, their opinion, like Dr. Geenens'opinion, is largely based on Plaintiff's subjective complaints and her erroneous account of her employment history.

Moreover, the therapists reported that Plaintiff had severe symptoms of depression, interpersonal conflict, avoidance, and attention deficits that had not improved during the time they treated her, from March to November 2011. But, they also reported that most of Plaintiff's therapy since July 2011 had focused on daily activity planning and that Plaintiff had reported improvement in completing household chores, complying with an exercise regimen, and attending various appointments.

Because the ALJ properly considered the therapists' opinion, and because he properly discredited their opinion as being unsupported by and inconsistent with the evidence, including Plaintiff's admitted activities of daily living, this Court concludes that the ALJ did not err. Plaintiff's reliance upon SSR 06-3p is inapposite, for that regulation provides that with respect to a non-acceptable medical source, such as these therapists, it is sufficient if the ALJ's decision permits the court to "follow the adjudicator's reasoning."[32] This Court can follow the ALJ's reasoning and finds no error.

### D.  Weight accorded agency psychologist Dr. Charles Fantz

In contrast to Dr. Geenens and therapists Kanga and Nelson, the ALJ gave great weight to the opinion of Dr. Charles Fantz, Ph.D., a psychologist and state agency medical consultant, who reviewed all of the records, including the treatment records of Dr. Geenens and therapists Kanga

---

[32]SSR 06-3p, 2006 WL 2329939, at *6 (Aug. 9, 2006).

and Nelson.   The *Goatcher* factors justify according Dr. Fantz's opinion great weight.   Though he was not in a treatment relationship with Plaintiff, Dr. Fantz' opinions were supported by the substantial medical and non-medical evidence.

Plaintiff argues that if Dr. Geenens' opinion was accorded little weight because it was rendered in a conclusory checklist form, then Dr. Fantz's opinion should likewise be accorded little weight.   But, Dr. Fantz did not merely opine that Plaintiff had mild restriction of activities of daily living, and moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace.   He explained these opinions, with specific reference to record evidence.

For example, in opining that Plaintiff's impairment, though severe, did not meet a Listing, Dr. Fantz articulated Plaintiff's history of depression, her varying diagnoses and the course of treatment she had received, beginning in California in 2011 and continuing after her move to Kansas through 2012.   He noted that Plaintiff had been treated with a medication regimen that was continually adjusted, that Plaintiff had experienced some improvement in symptoms, and that despite Plaintiff's subjective reports of not much improvement, third party reports as well as Plaintiff's self- reported activities belie her claims that she is not improving.   Dr. Fantz further found that Plaintiff's history demonstrated that she was able to manage even without treatment in the past for extended periods and that with continued treatment, as she is now receiving, she will be able to manage without treatment.

Moreover, in opining on Plaintiff's symptoms and RFC, Dr. Fantz explained that Plaintiff's subjective complaints were only partially credible, because of inconsistencies in other types of evidence, which he identified.   Dr. Fantz pointed to evidence that despite Plaintiff's

"ongoing struggles," recent progress notes evidenced better functioning than Plaintiff claimed. Although Dr. Fantz's explanations concerning his assessment of Plaintiff's RFC were not as extensive as his explanations of his determination that she did not meet a Listing, it is evident that he considered the medical and non-medical evidence, and evaluated the longitudinal record, noting in particular the record evidence that Plaintiff's symptoms were not worsening or static, but were improving with therapy and her medication regimen.

Thus, the ALJ properly gave great weight to Dr. Fantz's opinion that Plaintiff: is able to carry out simple, routine tasks and complete a normal workweek; can adapt to most work situations that do not require extensive independent planning and goal setting; and might have some difficulty getting along with others and thus should work in jobs that required only infrequent interaction with others. And, the ALJ properly explained and justified the weight he accorded Dr. Fantz's opinion.[33]

### E. Failure to include certain limitations in RFC.

The ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, but with only these nonexertional limitations: ability to understand, remember and carry out simple instructions and routine tasks; limited to occasional contact with the general public and socially isolated-type work would be best; ability to adapt to work situations that do not require extensive independent planning and goal setting. Plaintiff argues that the ALJ erred in failing to fully account for her difficulties in maintaining social functioning, and by only limiting her to occasional interaction with the general public but not providing limitations on her interaction with supervisors and coworkers.

---

[33] *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (holding that if an ALJ relies upon a non-treating physician or examiner's opinion, he must explain the weight given to it and give good reasons in the decision for the weight given the opinion).

First, as discussed above, the ALJ properly considered all of the evidence in concluding that Plaintiff's complaints of being socially isolated were exaggerated; nonetheless, the ALJ's RFC recognized that in the work setting, Plaintiff should be limited to occasional contact with the general public and that socially isolated-type work would be best. Plaintiff maintains that the RFC was erroneous because it did not include a limitation on her interaction with supervisors and coworkers, as required by SSR 96-9p.[34] To be sure, SSR 96-9p states that the mental activities generally required by competitive, remunerative, unskilled work include responding appropriately to supervision, coworkers and usual work situation.[35] But the RFC duly recognized that Plaintiff needs to work in socially-isolated type work.

Moreover, there is no evidence to support a greater limitation on interaction with supervisors and coworkers. First, as discussed above, Plaintiff self-reported that she interacted with people, including people in positions of authority, without problem. Even Dr. Geenens opined that Plaintiff had only slight limitations in ability to accept instruction and respond appropriately to supervisors. And, although Dr. Geenens opined that Plaintiff had marked limitations in her ability to work with coworkers, as discussed above, the ALJ properly gave no weight to this opinion. Instead, the ALJ recognized that the evidence supported a finding that Plaintiff "might have some difficulty getting along with others, and therefore should only work in jobs requiring infrequent interaction with others." For this reason, the ALJ's RFC limited Plaintiff to socially isolated work.

Plaintiff further argues that the RFC is erroneous because it fails to incorporate the ALJ's findings that Plaintiff has moderate difficulties in maintaining concentration, persistence, or pace,

_____

[34] SSR 96-9p, 1996 WL 374185 (July 2, 1996).

[35] Id.

20

and merely limits Plaintiff to simple or unskilled work. But, the RFC recognizes these difficulties in limiting Plaintiff to simple, routine work, and further recognizes that Plaintiff cannot adapt to work situations that do not require extensive independent planning and goal setting, and is limited to understanding, remembering and carrying out only simple instructions and routine tasks.

### F. Vocational Expert testimony

Finally, Plaintiff contends that Defendant failed sustain her burden to show, at step 5, that other work exists in significant numbers in the national economy that Plaintiff can do, given her RFC, age, education and work experience.[36] The ALJ found, based on the testimony of the vocational expert ("VE") that Plaintiff could perform the jobs of groundskeeper,[37] small products assembler,[38] and bottling line attendant.[39]

Plaintiff does not challenge that she can perform the job of bottling line attendant, but contends that she cannot perform the jobs of groundskeeper or small products assembler, and that the ALJ erred in relying upon erroneous testimony from the VE that she could perform these jobs. Defendant counters that despite the burden of proof resting on Defendant at this stage of the sequential analysis, Plaintiff failed to cross examine the VE to ferret out any perceived inconsistencies with the DOT and thus, Plaintiff has effectively waived this argument. But it is the duty of the ALJ, not the claimant, to determine if there are any inconsistencies with the DOT and if so, whether the VE's testimony is nonetheless supported by substantial evidence.[40]

---

[36]Plaintiff does not challenge the ALJ's determination that Plaintiff cannot perform her past relevant work.

[37]DICOT § 406.684-014 (January 1, 2008).

[38]DICOT § 706.684-022 (January 1, 2008).

[39]DICOT § 920.687-042 (January 1, 2008).

[40]*See Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999).

As the Tenth Circuit held in *Hackett v. Barnhart*,[41] "before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles and elicit a reasonable explanation for any discrepancy on this point."   Here, the ALJ asked the VE what jobs Plaintiff could perform and what the DOT classifications were that supported these jobs.   The VE proceeded to describe the jobs by job title, by DOT number, by exertional level and by Specific Vocational Preparation ("SVP").   But, the ALJ did not inquire of the VE whether there were any inconsistencies with the DOT, and if so, the explanation for her testimony in light of those inconsistencies.

 Plaintiff points to two perceived inconsistencies: that the job of groundskeeper requires performance of a variety of duties, while she is limited to simple, routine work; and that both the groundskeeper and small assembler jobs require "Reasoning: Level 2—Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations," while she is limited to understanding, remembering and carrying out only simple instructions, not detailed instructions. Upon remand, the ALJ must determine whether there are any inconsistencies between the RFC and the nonexertional requirements of these three jobs under the DOT.

**V.     Conclusion**

For all of the above stated reasons, the Court finds that while the ALJ properly evaluated Plaintiff's credibility, properly weighed the opinion evidence, and properly determined the RFC, the ALJ improperly relied upon the VE testimony to determine at step 5 that there are jobs that

---

[41]395 F.3d 1168, 1174—1175 (10th Cir. 2005) (citing *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999)) (addressing nonexertional requirements).

Plaintiff can perform in the national economy.    For these reasons, the Court reverses and remands the decision of Defendant.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.**

**IT IS SO ORDERED.**

 Dated: <u>February 2, 2016</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
